UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A. H.,<br><br>        Plaintiff,<br><br>    v.<br><br>WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT, et al.,<br><br>        Defendants. | Case No. 22-cv-03233-AMO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 42 |

Defendants Summer Sigler and West Contra Costa Unified School District ("the District") move to dismiss seven causes of action from Plaintiff A.H.'s Second Amended Complaint. The matter is fully briefed and suitable for decision without oral argument. *See* Civil L.R. 7-6. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby rules as follows.

## BACKGROUND

**A.    Factual Background**

The Second Amended Complaint makes the following allegations, which the Court accepts as true for purposes of the motion to dismiss. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). A.H., who was a minor when the complaint was filed, alleges that she was sexually abused by her teacher, Defendant Jane Shetterly, while she was a student at De Anza High School within the District. ECF No. 40, Second Amended Complaint ("SAC") ¶¶ 50, 98. At the time of the incidents giving rise to this action, A.H. qualified for an Individualized Education Program ("IEP") on the basis of her disabilities, which included anxiety, depression, and ADHD. *Id.* ¶¶ 2, 31. Shetterly allegedly took A.H. on several overnight trips, engaged in sexual acts with

her, and exchanged pornographic images with her including content depicting the two engaged in sexual acts and conduct. *Id.* ¶¶ 48-49.

In October or November 2020, Sigler, who was De Anza High School's Principal, allegedly witnessed Shetterly and A.H. arrive at school together and approached A.H. to "check in." *Id.* ¶ 59. During the ensuing conversation, A.H. referred to Shetterly as her "girlfriend" or "partner," and Sigler responded that she would "pretend [she] didn't hear that." *Id.* On another occasion "months before" Shetterly's arrest in May 2021, Sigler observed A.H. and Shetterly engaging in "inappropriate physical touching" in Shetterly's classroom. *Id.* Sigler knocked on the door and asked what was going on, but did not stop the conduct, nor did she report the conduct or take other corrective action. *Id.*[1]

After discovering that Shetterly taught classes remotely from A.H.'s home unsupervised, the District held a remote meeting led by Sigler to inform Shetterly that this action violated the District's policies. *Id.* ¶ 56. Shetterly attended this meeting from A.H.'s home. *Id.* The District did not formally reprimand Shetterly or conduct any follow up, and Shetterly continued to teach from A.H.'s home and sexually abuse her. *Id.* ¶¶ 57, 59. At least two teachers knew about Shetterly's "conduct with A.H.," but did not take any action. *Id.* ¶ 74. A.H.'s mother notified law enforcement after she independently discovered the abuse. *Id.* ¶ 69. Shetterly was arrested on May 30, 2021, and charged with multiple felony counts of sexual misconduct with a minor. *Id.* Shetterly was released and advised not to contact A.H., but she continued to reach out to A.H. by phone and text message and sought to meet with A.H. on the De Anza High School campus. *Id.* ¶¶ 69-70. A.H. eventually obtained a restraining order against Shetterly, which Shetterly has violated on several occasions. *Id.* ¶¶ 72-73.

**B.     Procedural Background**

A.H. filed her original complaint on June 2, 2022, against the District, Sigler, Shetterly,

---

[1] Defendants assert that the allegations in Paragraph 59 of the Second Amended Complaint, which did not appear in the two prior versions of the complaint, raise Rule 11 questions. However, they concede that at this juncture the Court must treat these allegations as true. *See* ECF No. 42, Motion to Dismiss ("Mot.") at 8.

1  and Does 1 through 50.[2]  After motion to dismiss briefing, but before any hearing, A.H. moved for
2  leave to file an amended complaint, which was granted on October 18, 2022.  A.H. filed her First
3  Amended Complaint on November 11, 2022.  On December 30, 2022, the Court issued an Order
4  dismissing all three federal claims because the First Amended Complaint failed to state a plausible
5  claim against the District as to Title XI, the ADA, or the Rehabilitation Act.  ECF No. 38, Motion
6  to Dismiss Order ("MTD Order").  The Court declined to exercise supplemental jurisdiction of the
7  state law claims until a plausible federal claim is alleged and granted A.H. leave to amend her
8  complaint for that purpose.  *Id.* at 5.  A.H. filed her Second Amended Complaint on January 20,
9  2023.

10  Defendants concede in their Motion to Dismiss that A.H.'s new allegations in Paragraph
11  59 of the SAC are sufficient to allege actual knowledge of the abuse, as required to state a claim
12  for violations of Title IX.  ECF No. 42, Motion to Dismiss ("Mot.") at 8.  Defendants therefore do
13  not move to dismiss the fifth cause of action in the SAC.  Accordingly, the Court has jurisdiction
14  over the case and will exercise supplemental jurisdiction over A.H.'s state law claims.  *See* 18
15  U.S.C. § 1376(c)(3); *Parra v. PacifiCare of Arizona, Inc.,* 715 F.3d 1146, 1156 (9th Cir. 2013).
16  The District moves to dismiss A.H.'s sexual harassment claim (fourth cause of action).  The
17  District and Sigler move to dismiss A.H.'s disability discrimination claims (eighth, ninth, and
18  eleventh causes of action) and claims for breach of a mandatory duty (first and sixth causes of
19  action).  Finally, the District moves to dismiss A.H.'s Bane Act claim (tenth cause of action).  The
20  Court addresses each of these claims in turn.   The moving defendants do not seek to dismiss
21  A.H.'s second, fifth, or seventh causes of action alleged against them, nor her third cause of action
22  alleged only against Jane Shetterly who did not participate in this motion.

**DISCUSSION**

**A.  Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

---

[2] Jane Shetterly, who is not represented by counsel, has failed to answer the complaint or make an appearance in this case.  She has only submitted a one-page letter asserting her Fifth Amendment rights, despite efforts by the Court to contact her.  ECF No. 17.  As a result, default was entered against Shetterly on February 8, 2023.  ECF No. 44.

1  if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to
2  dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its
3  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when
4  the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant
5  is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation
6  omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*
7  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts
8  sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

9  In deciding whether a claim upon which relief can be granted has been pleaded, the court
10 accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff.
11 *Usher*, 828 F.2d at 561. "[A]llegations that are merely conclusory, unwarranted deductions of
12 fact, or unreasonable inferences," however, need not be "accept[ed] as true." *In re Gilead Scis.*
13 *Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation omitted). If the
14 court dismisses a complaint, it "should grant leave to amend even if no request to amend the
15 pleading was made, unless it determines that the pleading could not possibly be cured by the
16 allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v.*
17 *United States*, 58 F.3d 494, 497 (9th Cir. 1995)). In making this determination, the court should
18 consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive,
19 repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing
20 party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d
21 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

22 **B.     Sexual Harassment Claim against the School District (Claim Four)**

23 A.H.'s fourth claim is for sexual harassment under California Civil Code Section 51.9 and
24 is asserted against all defendants. Civil Code Section 51.9 creates a cause of action for sexual
25 harassment against a "person" who is in a "business, service, or professional relationship" with the
26 plaintiff. Cal. Civ. Code § 51.9 (a)(1). The statute goes on to identify a nonexclusive list of
27 persons with whom such a relationship may exist, including physicians, landlords, and teachers.
28 *Id.*, § 51.9(a)(1)(A)-(I). The District moves to dismiss this claim on the basis that the District is

not a "person" in the meaning of the statute.³  Because the California Supreme Court has not ruled on whether a school district can be considered a "person" for purposes of Section 51.9, the Court must predict how it would decide the issue by looking to "intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 820 (9th Cir. 2018).  The Ninth Circuit has directed that district courts "follow a published intermediate state court decision regarding California law unless [the court is] convinced that the California Supreme Court would reject it." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (quoting *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013)).

The California Court of Appeal addressed the application of this statute to public school districts in *K.M. v. Grossmont Union High School District*, 84 Cal. App. 5th 717 (2022) ("*Grossmont*").  There, a student made a Section 51.9 claim against the school district based on allegations that a public-school employee sexual harassed him.  The Court of Appeal held that public school districts are not "persons" within the meaning of Civil Code Section 51.9, and that a claim under that statute was therefore not cognizable against the district. *Id.* at 752-53.  This was so because "a public school district is a political subdivision of the State of California," and there was no indication that the California legislature intended to impose Section 51.9 liability against public entities. *Id.* at 752 (internal citation omitted).

The Court finds the *Grossmont* decision's statutory interpretation persuasive and has no basis to conclude that the California Supreme Court would reject it.  In light of this decision holding that a Section 51.9 claim is not cognizable against a public school district, the District's motion to dismiss is **GRANTED**, and A.H.'s fourth cause of action against the District is **DISMISSED with prejudice**.  This claim may proceed to the extent it is alleged against other individual defendants.

**C.  Disability Discrimination Claims against the School District and Sigler**

    **1.  ADA and Section 504 Claims (Claims Eight and Nine)**

---

³ A.H. does not address the District's challenge to the Section 51.9 claim in her opposition to the motion to dismiss.  *See generally* ECF No. 45.

Intentional discrimination under Title II of the ADA requires a plaintiff to show that: "(1) she is a qualified individual with a disability; (2) she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of her disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *see also Yates v. E. Side Union High Sch. Dist.*, No. 18-cv-02966-JD, 2021 WL 3665861, at *6 (N.D. Cal. Aug. 18, 2021). The elements under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794) are similar. *Id.* Under Section 504, a qualified individual with a disability may not, solely by reason of his/her disability, be subjected to discrimination, excluded from participation in, or denied the benefits of, any program or activity receiving Federal financial assistance.[4]

In the Court's order dismissing the First Amended Complaint ("FAC"), it explained that the FAC did not plausibly allege that A.H. experienced discrimination "by reason of" her disability. ECF No. 38 at 4-5. Instead, the FAC alleged that students with disabilities are generally more likely to experience sexual misconduct by a teacher than students without disabilities, and it went on to make conclusory allegations that "A.H. was specifically targeted and preyed upon due to her vulnerabilities, including her gender, depression, social anxiety and that she was special needs with an IEP." *Id.* (citing ECF No. 33, FAC ¶¶ 23, 28, 166, 179, 211).

In the SAC, A.H. has added no new factual allegations in support of her disability discrimination claims. Instead, she alleges in a conclusory manner that she was "chosen and groomed because of her disability" and that Shetterly used her position of authority and A.H.'s disability to isolate and sexually assault her. SAC ¶¶ 314, 317. She alleges that the District and its teachers and administrators were aware that A.H. "(1) was susceptible to influence due to her diagnosis and ADHD, (2) that she was a minor susceptible to grooming and influence by her educators and those in whom she entrusted her confidences; and (3) that proper supervision, education, and reporting was not provided." *See, e.g.*, SAC ¶ 355.

The only attempts to link A.H.'s allegations of abuse with her disabilities are, first, where

---

[4] It is uncontested that the District receives Federal financial assistance and is therefore subject to the requirements of Section 504.

6

she alleges that "[i]n the guise of helping A.H. with her disabilities, Shetterly acted as a mentor and only sought to facilitate the sexual assault. Shetterly's work on ingratiating herself with Plaintiff's family and becoming a trusted person/adult in A.H's life." *Id.* ¶¶ 257, 294. Second, A.H. alleges that the District, Sigler, and Does 1-50 "unreasonably denied her an alternative placement despite knowing that the fear and anxiety that Plaintiff suffered following her physical assault prevented her from attending school." *Id.* ¶ 297. However, neither of these allegations solves the deficiency present in the SAC. They are both conclusory and lack a factual basis plausibly establishing that A.H. suffered abuse "by reason of" or "solely by reason of" her disabilities. Instead, she alleges that Shetterly used her position of authority as a teacher over A.H., a young student, and that A.H.'s disabilities made her generally more vulnerable to such abuse. A.H.'s allegations that she was denied alternative placement despite knowledge of her fear and anxiety are likewise conclusory and insufficient to establish disability discrimination. Defendants' motion to dismiss is **GRANTED** and the Eighth and Ninth causes of action are **DISMISSED** with leave to amend.

### 2. Government Code § 11135 (Claim Eleven)

Plaintiff's eleventh claim is asserted under California Government Code Section 11135, which provides that "[n]o person in the State of California shall, on the basis of . . . disability . . . be unlawfully denied full and equal access to the benefits of or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or . . . is funded directly by the state, or receives any financial assistance from the state." Cal. Gov't. Code § 11135(a). A.H.'s claim under Government Code Section 11135 is derivative of a claim under the ADA. SAC ¶ 389. Because A.H.'s ADA claim has been dismissed with leave to amend, Defendants' motion is **GRANTED** and A.H.'s eleventh cause of action is **DISMISSED** with leave to amend.

### 3. Government Code Section 815.6 Claims against the District and Sigler for Breach of Mandatory Duty (Claims One and Six)

A.H.'s first and sixth claims both seek to hold the District liable under California Government Code Section 815.6, which provides a private right of action against a public entity

7

for breach of a mandatory duty.[5] Her sixth cause of action is also alleged against Sigler. Three discrete requirements "must be met before governmental entity liability may be imposed under Government Code section 815.6: (1) an enactment must impose a mandatory duty; (2) the enactment must be meant to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered." *San Mateo Union High Sch. Dist. v. Cty. of San Mateo*, 213 Cal. App. 4th 418, 428 (2013) (quotation marks and citation omitted). The first element requires that "the enactment at issue be obligatory, rather than merely discretionary or permissive, in its directions to the public entity; it must require, rather than merely authorize or permit, that a particular action be taken or not taken." *Id.*; *see also O'Toole v. Superior Court*, 140 Cal. App. 4th 488, 510 (2006) (finding that a statute prohibiting certain conduct but not setting forth guidelines or rules did not create a mandatory duty); *De Villers v. County of San Diego*, 156 Cal. App. 4th 238, 256 (2007). Therefore, a provision of law requiring an action without specific guidance on its implementation is not sufficient to create a mandatory duty.

### a. California Statutes Potentially Giving Rise to Mandatory Duty for a Section 815.6 Claim

In order to state a claim against the District under Government Code § 815.6, A.H. must first identify an underlying statute that imposes a mandatory duty upon the District.[6] A.H. attempts to do so through a litany of statutes, but most of those statutes do not create a mandatory duty in the meaning of Section 815.6.

### i. California Education Code Sections 44807, 48200, and 48900.2-

---

[5] A.H.'s first cause of action also alleges vicarious liability against the District under Government Code Section 815.2 because she alleges that employees of the District were negligent in failing to reasonably supervise Shetterly. SAC ¶ 90. The District does not challenge this theory of liability and it may proceed.

[6] A.H. argues in the alternative that even if the cited code sections do not directly impose a mandatory duty on the District, any duty imposed on schools or their teachers and employees can be imputed to the District. A.H. cites no authority for this assertion, and the Court rejects it. The District is a public entity, and established California precedent dictates that public entities can only be liable where a statute expressly authorizes liability. *See, e.g., Guzman v. County of Monterey*, 46 Cal. 4th 887, 897 (2009). A statute that only imposes liability on a school employee cannot be read to create liability against the District absent indicia that the legislature intended this outcome.

8

**48900.4**

California Education Code Section 44807 sets forth the general duty of supervision, and the California Supreme Court has expressly stated that it did not impose a mandatory duty upon school districts sufficient to state a claim under Government Code Section 815.6. *Hoff v. Vacaville Unified Sch. Dist.*, 19 Cal.4th 925, 939 (1998). Sections 48900.2-48900.4 relate to discipline of students and are permissive in nature, stating that a student may be suspended or recommended for expulsion under certain circumstances. Section 48200 requires compulsory education, but likewise does not impose this duty on the school district, but on the student's parent or guardian. None of these provisions give rise to a mandatory duty.

### ii. Sections 5551 and 5552 of Title 5 of the California Code of Regulations

Sections 5551 and 5552 of title 5 of the California Code of Regulations provide that school principals are responsible for supervision at schools and that playgrounds must be supervised. *See, e.g.,* Cal. Code Regs., tit. 5, § 5552 ("[w]here playground supervision is not otherwise provided, the principal of each school shall provide for the supervision by certificated employee. . . ."). Neither of these regulations requires a public entity to take "particular action" or provide "implementing guidelines or rules" to facilitate a statutory requirement, and these regulations therefore cannot give rise to a mandatory duty under Government Code Section 815.6. *See De Villers*, 156 Cal. App. 4th at 256 (finding no mandatory duty where "the predicate enactment confers on government officials the discretion to evaluate and decide how best to implement the required security").

### iii. Article 1, Sections 26 and 28 of the California Constitution

In *Clausing v. San Francisco Unified Sch. Dist.*, 221 Cal. App. 3d 1224 (1990), the Court of Appeal held that Article 1, Section 28 of the California Constitution (which provides a "Right to Safe School") and Section 26 (which provides that all provisions of the Constitution "are mandatory and prohibitory") do not give rise to a viable cause of action against a school district under Government Code § 815.6 because "[t]hey fail to supply the necessary rules for

implementation of the rights they set forth." *Id.* at 1241.[7]  The same reasoning and authority apply here.  Those provisions do not establish a mandatory duty to support a claim under Section 815.6.

### iv. Education Code Sections 32260 through 32296

These statutes constitute the Interagency School Safety Demonstration Act (Cal. Educ. Code, § 32260 et seq.) and the School Safety Plan Act (§ 32280 et seq.) and require the development of safety plans at schools.  For example, Section 32281 provides that "[e]ach school district and county office of education is responsible for the overall development of all comprehensive school safety plans for its schools operating kindergarten or any of grades 1 to 12, inclusive." Cal. Educ. Code § 32281(a).  The development of safety plans and identification of "appropriate strategies," as required by the statue, is a discretionary function that does not give rise to a mandatory duty within the meaning of Section 815.6.  *See Guzman v. County of Monterey*, 46 Cal. 4th 887, 899 (2009).

### v. California Education Code Section 44808

Section 44808 provides that school districts are not responsible for the safety of students off campus "unless such district . . . has undertaken to provide transportation for such pupil to and from the school . . . [or] has otherwise specifically assumed such responsibility . . . ." Cal. Educ. Code § 44808.  A.H. argues that this statute can form the basis for liability where the school district assumes a responsibility but fails to act reasonably in carrying it out.  She cites *Hoff v. Vacaville Unified School Dist.*, where the California Supreme Court did not explicitly reject this theory but dismissed a claim because the school district had not "specifically assumed" responsibility for the parking lot where an injury occurred.  19 Cal. 4th 925, 940 (1998).  The same reasoning applies here, where A.H. only alleges in conclusory fashion that the District specifically assumed responsibility for her off-campus safety.  SAC ¶¶ 77, 81.  The generalized and conclusory contention that the District specifically assumed responsibility lacks factual

---

[7] Defendants point out that in *Clausing v. San Francisco Unified Sch. Dist.*, 221 Cal. App. 3d 1224 (1990), the court rejected a claim that Education Code Sections 49000 and 49001 (which prohibit corporal punishment in schools) gave rise to mandatory duties under Government Code Section 815.6. *Id.* at 1239-40.  The SAC does not raise Sections 49000 and 49001 as bases for Section 815.6 liability.

support and need not be accepted as true at this stage. *See In re Gilead Scis.*, 536 F.3d at 1055. As pleaded, Section 44808 does not give rise to a mandatory duty under the meaning of Section 815.6.

                vi.        **California Child Abuse and Neglect Reporting Act ("CANRA")**
                                        **(California Penal Code Section 11164 et seq.)**

CANRA requires "mandated reporters" such as teachers and school administrators to make a report to an appropriate agency "whenever the mandated reporter, in the mandated reporter's professional capacity or within the scope of the mandated reporter's employment, has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect." Cal. Pen. Code § 11166.

The District argues that because the District itself is not a mandated reporter, it cannot be liable under this statute, though it concedes that this statute creates a mandatory duty for its employees. A.H. counters that the District is made up nearly entirely of mandated reporters and thus should be held liable under this statute. Section 815.6 begins: "[w]here a *public entity* is under a mandatory duty imposed by an enactment . . . ." Government Code § 815.6 (emphasis added). Accordingly, the Court finds that Section 815.6 requires that the underlying statute place a mandatory duty on the public entity itself. The Court cannot infer the legislature's intent to place a duty upon the District from the creation of a duty upon its employees. Accordingly, CANRA cannot give rise to Section 815.6 liability against the District.

Because A.H. has not identified a statute giving rise to a mandatory duty, she has not plausibly pleaded that the District has violated a mandatory duty under Section 815.6.

                **b.**        **Violation of Cal. Penal Code Section 11166 against Sigler (Claim Six)**

A.H.'s sixth cause of action, also asserted under Government Code Section 815.6, makes a claim against Sigler based on her alleged violation of California Penal Code Section 11166, which is a mandatory reporting statute. SAC ¶¶ 185-94. Government Code Section 815.6 only authorizes liability against public entities – not individuals. The statute therefore cannot serve as the basis to state a claim against Sigler. *See* Government Code § 815.6. Even if A.H. intended to directly allege a violation of Section 11166 against Sigler, the claim could not succeed. Penal

11

Code Section 11166 is a criminal statute and does not authorize a private right of action. *See Yates v. E. Side Union High Sch. Dist.*, No. 18-CV-02966-JD, 2021 WL 3665861, at *7 (N.D. Cal. Aug. 18, 2021) (granting summary judgment on a section 11166 claim because the statute does not authorize a private right of action); *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) ("criminal statutes rarely imply a private right of action.").

To the extent the first and sixth causes of action seek to hold the District directly liable for a breach of mandatory duty under Government Code Section 815.6, the District's motion is **GRANTED** and the first and sixth causes of action are **DISMISSED** with leave to amend. To the extent the sixth cause of action seeks to hold Sigler liable under Government Code Section 815.6 or California Penal Code Section 11166, it is **DISMISSED with prejudice**.

### 4. Bane Act (Claim Ten)

A.H.'s tenth cause of action is for violation of California Civil Code Section 52.1 (known as the Bane Act) and is asserted against the District. The Bane Act requires evidence that a defendant interfered with the exercise of a plaintiff's rights under federal or California law by "threat, intimidation, or coercion." Cal. Civ. Code § 52.1. The "focus is on whether the challenged conduct amounts to an intentional or 'knowing and blameworthy interference with the plaintiffs' constitutional rights.'" *Eberhard v. Cal. Highway Patrol*, No. 3:14-CV-01910-JD, 2015 WL 6871750, at *8 (N.D. Cal. Nov. 9, 2015) (quoting *Gant v. Cnty. of Los Angeles*, 772 F.3d 608, 623-24 (9th Cir. 2014)). To state a claim under the Bane Act, A.H. must plead that the District acted with the specific intent to violate her civil rights. *County Inmate Telephone Service Cases*, 48 Cal. App. 5th 354, 369-372 (2020); *see also Inman v. Anderson*, 294 F. Supp. 3d 907, 931-932 (N.D. Cal. 2018) (dismissing Bane Act claim for failure to allege specific intent or facts that specific intent could reasonably be inferred). Courts in this district have held that "if a plaintiff adequately pleads a claim for deliberate indifference, which requires a pleading of reckless disregard, then [they have] sufficiently alleged the intent required for the Bane Act claim." *Luttrell v. Hart*, No. 5:19-CV-07300-EJD, 2020 WL 5642613, at *5 (N.D. Cal. Sept. 22, 2020); *see also M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 898 (N.D. Cal. 2013).

A.H.'s allegations rest on the theory that the District and Sigler were deliberately

indifferent to the ongoing abuse by Shetterly and ratified Shetterly's conduct. SAC ¶¶ 51-68, 269-273. Defendants challenge A.H.'s Bane Act claim on two grounds. First, they assert that A.H. has failed to allege that any District employee acting within the scope of employment engaged in the requisite "threats, intimidation, or coercion" required by the statute. They note that Shetterly's abuse cannot meet that requirement because school districts cannot be held vicariously liable for sexual misconduct of their teachers. Second, they argue that *Grossmont* renders A.H.'s "ratification" theory is nonviable.

A.H. has alleged that Sigler, a District employee acting within the scope of her employment, had direct knowledge of the abuse and failed to take remedial action. Specifically, A.H. alleges that Sigler witnessed A.H. and Shetterly engaging in "inappropriate physical touching" in Shetterly's classroom. SAC ¶ 59. A.H. additionally alleges that, on a separate occasion, in a conversation with Sigler, A.H. referred to Shetterly as her girlfriend, and that Sigler responded that she would "pretend [she] didn't hear that." *Id.* In both instances, A.H. alleges that Sigler failed to take any action in response. This is sufficient to allege deliberate indifference. Under this theory, the District is not vicariously liable for Shetterly's alleged abuse, but for Sigler's deliberate indifference to it. Accordingly, A.H. has sufficiently stated a claim under the Bane act to survive a motion to dismiss, and Defendants' motion is **DENIED** as to this claim.

## CONCLUSION

The Court hereby **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss. Plaintiff has 30 days from the date of this order to amend her complaint in support of her first, sixth, eighth, ninth, and eleventh causes of action.

This order disposes of ECF No. 42.

**IT IS SO ORDERED.**

Dated: September 28, 2023

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**