United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

A. H.,

Plaintiff,

v.

WEST CONTRA COSTA UNIFIED
SCHOOL DISTRICT, et al.,

Defendants.

Case No. 22-cv-03233-AMO

**ORDER GRANTING IN PART
MOTION FOR SUMMARY
JUDGMENT OF DEFENDANTS
SUMMER SIGLER & WEST CONTRA
COSTA UNIFIED SCHOOL DISTRICT;
DISMISSING REMAINING CLAIMS
WITHOUT PREJUDICE**

Re: Dkt. No. 104

This is a tort and discrimination case arising from a high school teacher's sexual assault of a minor student. Defendants Summer Sigler and West Contra Costa Unified School District ("the District" or "WCCUSD") move for summary judgment as to all remaining causes of action asserted against them. The motion for summary judgment was heard before this Court on December 18, 2025. Having read the parties' papers and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court GRANTS Defendants' motion in part, declines to exercise supplemental jurisdiction over the remaining state law causes of action, and DISMISSES the remainder of the claims without prejudice to re-filing in state court, for the following reasons.

I.     BACKGROUND

Plaintiff A.H. alleges she was sexually abused by one of her teachers, Jane Shetterly, while a student at De Anza High School within the West Contra Costa Unified School District during the 2020-2021 school year. *See* Third Am. Compl. (Dkt. No. 60). A.H. started attending De Anza High School as a freshman in August 2019, when she was 14 years old. A.H. was a student with special needs and was identified as having a Specific Learning Disability which required an Individualized Education Program ("IEP"). Sigler Dep. at 24:3-9. During A.H.'s time at De Anza

High School, Sigler was the principal.  Sigler Dep. at 19:14-18.  In September 2019, Assistant Principal Kim Jordan was appointed the "admin point person" for issues involving A.H. and would give Principal Sigler regular updates.  Sigler Dep. at 29:9-25, 44:13-18.

Upon starting at De Anza, A.H. began spending increasing amounts of time with Shetterly before, during, and after school.  A.H. Dep. at 117:5-14.  Shetterly immediately took an interest in A.H., asking questions about her personal life and private matters.  A.H. Dep. at 118:16-119:10, 120:8-14, 125:2-9.  Shetterly provided A.H. with her cell phone number and the two began communicating regularly on their cell phones.  A.H. Dep. at 125:20-126:7, 131:16-20.  Shetterly would also take A.H. into the teacher's lounge and faculty restroom.  A.H. Dep. at 127:17-128:9, 128:15-18.  Principal Sigler noticed A.H. spending time in Shetterly's room during the 2019/2020 school year before the pandemic.  Sigler Dep. at 59:23-60:24.

De Anza High School's in-person instruction ceased in March 2020 when the COVID pandemic hit.  Sigler Dep. at 36:20-22.  During the summer following her first year at De Anza, A.H. emailed Assistant Principal Jordan and told her "of course me and Shetterly, we talk on the daily."  Jordan Dep. Ex. 7; Jordan Dep. at 52:17-53:7.  Principal Sigler admitted this conduct would be "unusual" and "outside the norm" and was something she would want to look into further.  Sigler Dep. at 53:9-12, 53:23-25.  By September 30, 2020, Principal Sigler knew Shetterly and A.H. were "very close" and spending time together.  Sigler Dep. at 59:10-22, 51:25-52:7.

As A.H. entered her second year at De Anza, Shetterly became increasingly involved in her life.  By fall 2020, Shetterly and A.H. spent almost every weekday together.  Shetterly Dep. at 30:16-23.  Shetterly first sexually assaulted A.H. around September 2020, following months of grooming.  A.H. Dep. at 79:4-10, 155:1-16; Shetterly Dep. at 31:18-22.  The sexual assault continued consistently from September 2020 up to the date of Shetterly's arrest on May 30, 2021.  Shetterly Dep. at 31:23-32:5.

Between September 2020 and May 2021, Shetterly sexually assaulted A.H. on numerous occasions and exchanged and requested explicit images.  Shetterly Dep. at 111:4-112:16.  Shetterly also provided A.H. with drugs and alcohol and lied to A.H.'s mother in furtherance of

United States District Court
Northern District of California

2

her sexual assault of A.H. A.H. Dep. at 165:5-18; Shetterly Dep. at 121:4-9. At some point during the 2020/2021 school year, Shetterly began to teach from A.H.'s house and continued to do so until in-person instruction resumed. A.H. Dep. at 134:9-18, 151:8-152:5.

By October 2020, Assistant Principal Jordan had reported to Principal Sigler concerning behavior between Shetterly and A.H., and Principal Sigler acknowledged that Shetterly overstepped boundaries. Sigler Dep. at 70:5-9, 70:17-23. Principal Sigler herself also noticed that Shetterly was acting "inappropriately" in October 2020. Sigler Dep. at 62:10-63:1.

As a special needs student with an IEP, A.H. had a case manager during her time at De Anza High School, Marlene Trempy. Trempy Vol. II Dep. at 88:19-21. As A.H.'s case manager, Trempy would write the IEP, work with the family, help determine academic goals, and remain closely involved with A.H. during her time at De Anza. Sigler Dep. at 64:24-65:17. Trempy testified that she started to observe Shetterly overstep boundaries in the beginning of October 2020 and went to Principal Sigler to report her concerns. Trempy Vol. II Dep. at 126:2-4, Sigler Dep. at 56:22-57:6.

On October 20, 2020, Trempy observed Shetterly on A.H.'s Zoom camera in A.H.'s bedroom. Trempy Vol. II Dep. at 134:24-135:22. Trempy raised the issue with Principal Sigler "right away." Trempy Vol. I Dep. at 50:18-21; Trempy Vol. II Dep. at 136:1-3. Principal Sigler recalled Trempy advising her that Shetterly was in A.H.'s Zoom classroom but denied being told Shetterly was in A.H.'s bedroom at the time. Sigler Dep. at 63:8-14, 77:1-15, 77:25-78:9, 79:1-5, 94:9-14, 172:7-9, 213:22-25. Assistant Principal Jordan also denied being told by Trempy that Shetterly was in A.H.'s bedroom. Jordan Dep. at 218:4-8. Principal Sigler testified that if it was reported to her that Shetterly was in A.H.'s bedroom during school hours it would have triggered a call to human resources ("HR"), and it could be a serious offense. Sigler Dep. at 79:6-15, 84:8-15. However, Principal Sigler admitted that she was aware that Shetterly was spending time at A.H.'s home and teaching classes from A.H.'s home. Sigler Dep. at 102:19-23, 213:11-21. Jordan similarly knew Shetterly was spending time at A.H.'s home in October 2020, including during school and teacher work hours. Jordan Vol. II at Dep. 226:10-13.

WCCUSD administrators held a meeting with Shetterly to discuss her conduct on October 23, 2020. Assistant Principal Jordan prepared a conference summary of the meeting, which Principal Sigler reviewed. Jordan Dep., Ex. 20; Jordan Vol. I Dep. at 75:19-76:9; Sigler Dep. at 93:5-93:12. The conference summary outlines some of Shetterly's "inappropriate conduct" in October 2020, including spending time at a student's home during school hours. Jordan Dep., Ex. 20; Jordan Vol. I Dep. at 75:19-76:9. Shetterly received several directives, including, "stop spending time alone with this student at her home or in any other location." Jordan Dep., Ex. 20; Jordan Vol. I Dep. at 75:19-76:9; Sigler Dep. at 101:20-102:1. Principal Sigler did not go to HR and never spoke with A.H.'s parents about Shetterly being in A.H.'s bedroom. Sigler Dep. at 80:19-81:9, 86:17-22. Shetterly was not disciplined as a result of her conduct and Principal Sigler described the conference as a warning that she was at risk of discipline. Sigler Dep. at 105:14-106:8.

Shetterly attended A.H.'s 16th birthday party at a rental home despite Assistant Principal Jordan warning that an in-person meeting for A.H.'s 16th birthday would be problematic and a "boundary thing." Jordan Dep. Ex. 25; Jordan Dep. at 95:13-23. Shetterly used her work email to send rental reservation information to A.H. Shetterly Dep. Ex. 16; Shetterly Dep. at 101:8-14. A.H. thereafter told Jordan about Shetterly attending her 16th birthday party. A.H. Dep. at 182:10-15. Shetterly posted social media photos, some of which Principal Sigler admitted she saw and which "gave [her] pause." Sigler Dep., Ex. 33; Sigler Dep. at 195:5-197:13, 198:12-18; Shetterly Dep. at 56:1-57:10.

By spring of 2021, WCCUSD began to transition away from remote classes. De Anza reopened for in person instruction to certain students in April 2021, including A.H. Sigler Dep. at 38:10-39:16. After the October 23, 2020 instruction to "stop spending time with [A.H.] at her home or any other location," Trempy observed A.H. getting out of Shetterly's car at school. Trempy Vol. II Dep. at 142:25-143:2. Trempy immediately reported what she observed to Principal Sigler and Assistant Principal Jordan. Trempy Vol. I Dep. at 52:12-19.

A.H. testified that Principal Sigler observed Shetterly and A.H. alone together walking out of a storage closet in Shetterly's classroom with her arm around A.H.'s waist. A.H. Dep. at

200:22-202:19.  Sigler testified that she never saw A.H. and Shetterly alone in a classroom together and never saw them coming out of a storage closet.  Sigler Dep. at 154:11-19.

In March 2021, A.H. and Shetterly visited the home of District art teacher Ruth Paesch.  A.H. Dep. at 159:1-20.  Shetterly called A.H. "baby" during the visit, which prompted a question from Paesch.  A.H. Dep. at 160:7-12; 161:1-25.  A.H. testified that the two shared a look, and she acknowledged the nickname was "a little strange."  *Id.* at 161:1-25.  Paesch testified that she first became aware of the romantic relationship between A.H. and Shetterly only after Shetterly's arrest in May 2021.  Paesch Dep. at 102:4-6; 139:21-140:13.  She had no prior knowledge, suspicions, or concerns that A.H. and Shetterly were engaged in an inappropriate relationship.  *Id.* at 88:8-14; 100:12-22; 103:3-13; 103:25-104:9; 109:6-9; 110:11-111:19; 132:20-133:23.  The only other individual A.H. told about the relationship was a friend.  A.H. Dep. at 162:17-25.  A.H. told no one else she was in a sexual relationship with Shetterly prior to Shetterly's arrest.  *Id.* at 163:6-14.

In April 2021, Trempy observed A.H. and Shetterly "come in the building holding hands.  And when they saw me, they dropped their hands, but they were acting in a way that, as I said, my mom tingling senses went off.  It didn't seem appropriate.  It was too intimate.  It was too chummy.  I saw no boundaries physically between those two."  Trempy Vol. I Dep. at 37:11-22.  It was clear to Trempy that there was an "inherent intimacy to their action" and it "was not just teacher/student."  Trempy Vol. I Dep. at 73:18-21, 73:22-74:3; Trempy Dep Ex. 37; Trempy Vol. II Dep at 176:3-12.  After seeing A.H. and Shetterly holding hands, she immediately reported it to Principal Sigler.  Trempy Vol. I Dep. at 40:22-24.

On April 27, 2021, Trempy sent an email outlining some of her concerns, including the lack of boundaries between Shetterly and A.H. and their ongoing relationship.  Trempy Dep., Ex. 31; Trempy Vol. II Dep. at 158:20-161:17.  Trempy expressed that "admin needs to step in" and felt the "ongoing relationship" "needs to be addressed."  *Id.*  Trempy filed a CPS report on April 30, 2021.  Trempy Dep., Ex. 2; Trempy Vol. I Dep. at 46:11-47:7; Trempy Vol. II Dep. at 166:1-9, 172:23-173:4.  Principal Sigler knew Trempy filed a CPS Report.  Sigler Dep. at 216:5-7.

On May 26, 2021, school psychologist Beth Frieswyk-Masters observed A.H. and Shetterly "Eskimo kiss" (affectionately rub their noses together) and Shetterly rub A.H.'s arm in

United States District Court
Northern District of California

an off-campus restaurant.  Frieswyk-Masters Dep. Ex 24; Frieswyk-Masters Dep. at 25:1-7, 96:16-25; Sigler Dep. at 182:16-18.  Frieswyk-Masters testified she reported what she observed to Assistant Principal Jordan that same day, May 26, 2021.  Frieswyk-Masters Dep. at 25:16-26:17.  Jordan testified that Frieswyk-Masters reported what she saw to her on May 27, 2021.  Jordan Dep. Vol. II at 210:24-211:5.  Jordan testified she instructed Frieswyk-Masters to file a CPS report.  Jordan Vol. II Dep. at 211:6-8.  On or about May 27, 2021, Jordan reported to Principal Sigler and relayed the information regarding the public, affectionate nose rubbing and arm rubbing.  Jordan Vol. II Dep. at 211:11-16, 214:25-215:16.  Principal Sigler denies talking to Frieswyk-Masters or learning information about this incident prior to Shetterly's arrest.  Sigler Dep. at 168:8-169:12, 181:4-11.  Principal Sigler testified that, if she knew the information Frieswyk-Masters reported, she would have gone to HR.  Sigler Dep. at 193:22-25.

On May 28, 2021, A.H.'s mother, Jamie Danberg, discovered cards from Shetterly and found pictures and text messages showing A.H. had been sexually assaulted.  Danberg Dep. at 115:12-118:13.  Danberg contacted the Richmond Police Department to report what she discovered.  *Id.*  Shetterly was arrested and WCCUSD was notified of the arrest on or about May 30, 2021.  Sigler Dep. at 183:20-184:22.  Shetterly was placed on paid administrative leave on June 1, 2021.  Sigler Dep. at 186:1-5.

A.H. never told Frieswyk-Masters, Assistant Principal Jordan, or Principal Sigler that Shetterly was sexually assaulting her or that they had any type of sexual relationship.  A.H. Dep. at 192:18-23, 196:5-11, 197:1-8.

## II.   DISCUSSION

Both Defendants, the District and Sigler, move for summary judgment in their favor on all claims asserted against them by A.H., including claims for (1) negligence (against the District and Principal Sigler); (2) negligent hiring, supervision, or retention (against the District and Sigler); (3) violation of Title IX (against the District); (4) discrimination in violation of California Education Code section 200 (against the District); and (5) discrimination in violation of the Bane Act, California Civil Code section 52.1 (against the District and individuals).  After setting forth the relevant legal standard, the Court addresses the sole remaining federal cause of action for

United States District Court
Northern District of California

violation of Title IX.  The Court then considers its exercise of supplemental jurisdiction over the remaining state law causes of action.

### A. Legal Standard

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on a "claim or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *Id.*  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324-25 (noting a moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial.  Fed. R. Civ. P. 56(c), (e).  The asserted disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment." *Anderson*, 477 U.S. at 247-48. "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (affirming summary judgment in favor of defendants where there was "no evidence in the record from which a trier of fact could have" found for plaintiff).

When deciding a summary judgment motion, courts must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). However, when a non-moving party fails to produce evidence rebutting the moving party's showing, then summary adjudication is proper. *Nissan Fire*, 210 F.3d at 1103 ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment."). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## B.    Violation of Title IX (against WCCUSD)

Defendants aver that A.H.'s cause of action for gender discrimination under Title IX fails on the basis that the District did not have actual knowledge of the discrimination. Title IX of the Education Amendments of 1972 states:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

A "damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 290 (1998). Actual notice on the part of the federal funding recipient is critical because it is the deliberate failure to curtail known harassment, rather than the harassment itself, that constitutes

8

the Title IX violation. *Lopez v. Regents of University of California*, 5 F. Supp. 3d 1106, 1122 (2013) (citing *Mansourian v. Regents of Univ. of California*, 602 F.3d 957, 967 (9th Cir. 2010)). Moreover, to prove actionable, "Title IX plaintiffs asserting a sexual harassment theory must demonstrate that the harassment was so severe, pervasive, and objectively offensive that it caused a deprivation of educational opportunities or benefits." *Lopez*, 5 F. Supp. 3d at 1121 (citing *Porto v. Town of Tewksbury*, 488 F.3d 67, 72 (1st Cir. 2007)); *see also Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).

The Supreme Court's opinion in *Gebser* set forth the standard for a plaintiff who seeks damages based on a claim of discrimination under Title IX. *Gebser*, 524 U.S. at 277-78. There, like here, the plaintiff brought a claim for discrimination under Title IX against a school district on a theory of sexual harassment arising from a high school teacher's grooming and sexual assault of a minor plaintiff. Parents had separately complained to the school administration about the same teacher's sexually inappropriate comments to students during class, but the administration did not learn of the teacher's sexual assault of the student until after police caught him in the act. *Gebser*, 524 U.S. at 277-78. Following a lengthy discussion distinguishing a judicially-implied cause of action for discrimination in education under Title IX from the congressionally-authorized cause of action for discrimination in employment under Title VII, the Court held that a school district receiving federal funds can be subject to a Title IX claim for damages as a result of sexual harassment by one of its teachers only if an appropriate official had actual notice of the harassment and the school responded with deliberate indifference. *Id.* at 290-91.

Here, Plaintiff has put forward no evidence that any DeAnza official had actual knowledge of the sexual harassment of A.H. by Shetterly. A.H. testified that she never told Frieswyk-Masters that Shetterly was sexually harassing her or that they had any type of sexual relationship. A.H. Dep. at 192:18-23. A.H. testified that she did not tell Assistant Principal Jordan that Shetterly was sexually harassing her or that they had any type of sexual relationship. A.H. Dep. at 196:5-11. A.H. testified that she did not tell Principal Sigler about Shetterly's actions or that they had any type of sexual relationship. A.H. Dep. at 197:1-8. And staff testified that they did not know of Shetterly's conduct until after the arrest – Trempy testified that she found out about the "sexual

United States District Court
Northern District of California

relationship" between A.H. and Shetterly only upon Shetterly's arrest.  Trempy Dep. at 61:22-62:6.  A.H. presents no countervailing evidence that any of the District's staff learned of the sexual harassment prior to Shetterly's arrest, much less that they responded with deliberate indifference.  Instead, A.H. advances evidence that stops short of actual knowledge, and which instead suggests that, based on the instances of boundary-crossing conduct by Shetterly, Defendants had constructive knowledge about Shetterly's sexual harassment of A.H. – constructive knowledge that falls short under Title IX.  *See* Dkt. No. 105 at 20-22.

Sigler and Jordan were aware of some disturbing conduct, including a relationship between A.H. and Shetterly that clearly exceeded expected and appropriate student-teacher dynamics. Principal Sigler had actual knowledge of multiple instances of physical contact, including Shetterly's arm around A.H.'s waist, Shetterly holding hands with A.H., Trempy Dep. at 73:11-15, and "Eskimo kissing," Frieswyk-Masters Dep. at 119:14-19.  Though the principal's observation of the pair coming out of a storage closet together would be significant, it does not establish Sigler actually knew Shetterly was engaged in the severe and pervasive sexual harassment of a student, particularly where no one knew the nature of A.H. and Shetterly's relationship.[1]  Overall, these incidents do not establish actual notice that Shetterly was subjecting A.H. to  severe, pervasive, or objectively offensive sexual harassment.  *Cf. Gebser*, 524 U.S. at 279 (holding that a school principal's knowledge of inappropriate teacher comments within educational setting did not establish actual notice that the same teacher engaged in sexual abuse of student).  A.H. does not cite any authority suggesting that the complained-of conduct rises to the level of severe, pervasive, or objectively offensive, and the Court cannot conclude otherwise.

Ultimately, Principal Sigler, Assistant Principal Jordan, and the other staff at De Anza failed to protect A.H. from being groomed and sexually assaulted, but those failures do not establish liability for discrimination under Title IX because A.H. cannot show that they had actual

---

[1] The parties dispute whether Principal Sigler observed Shetterly and A.H. alone together walking out of a storage closet in Shetterly's classroom with her arm around A.H.'s waist.  *Compare* A.H. Dep. at 200:22-202:19 *with* Sigler Dep. at 154:11-19.  However, because this incident does not rise to the level of "severe, pervasive, and objectively offensive" necessary to constitute sexual harassment, any factual dispute is immaterial to the Court's conclusion and does not preclude summary judgment.  *Lopez*, 5 F. Supp. 3d at 1121; *see also Anderson*, 477 U.S. at 248.

United States District Court
Northern District of California

knowledge and responded with deliberate indifference. Thus, the District is entitled to judgment on the Title IX discrimination claim.

### C.    Declination of Supplemental Jurisdiction

"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Ninth Circuit has emphasized that "[i]n the usual case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).

Having disposed of the sole remaining federal claim in this matter, there is no longer a persuasive reason for the Court to exercise supplemental jurisdiction over A.H.'s state law claims. The Court finds that the balance of factors does not weigh in favor of retaining jurisdiction. Most importantly, the Court finds "that principles of comity will be well-served by allowing the state courts to resolve claims solely of state law" because of the potential application of statutory immunities. *Danner v. Himmelfarb*, 858 F.2d 515, 524 (9th Cir. 1988); *see also* Cal. Educ. Code § 44808. Therefore, the Court exercises its discretion to deny supplemental jurisdiction over A.H.'s remaining state law causes of action and dismisses those claims without prejudice to re-filing in state court.

//

//

//

11

**III.    CONCLUSION**

For the foregoing reasons, the Defendants' motion for summary judgment is GRANTED in part and DENIED in part as MOOT.  The Court DECLINES supplemental jurisdiction over A.H.'s remaining state law claims and DISMISSES the remaining claims without prejudice to re-filing in state court.

**IT IS SO ORDERED.**

Dated: February 20, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California

12